UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MULUGETA HAILU et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 22-cv-00020 (APM) |
| UNIQUE N. MORRIS-HUGHES et al., | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

**I.**

Four individuals—Mulugeta Hailu, Mizan Werede, William Perry, and Yohannes Woube—filed this action against the Director of the D.C. Department of Employment Services, Unique Morris-Hughes; Mayor Muriel Bowser; and the District of Columbia (collectively, "the District"). They assert various statutory and constitutional claims and allege, in essence, that the District (1) fails to provide written notice of adverse unemployment-benefits determinations and (2) improperly refuses to review on appeal adverse determinations that lack written findings. *See* Compl., ECF No. 1, ¶¶ 35–118. Three plaintiffs[1] ("Plaintiffs") have moved for a preliminary injunction that includes both prospective and retrospective relief: they seek an order requiring the District (1) to make certain systemic changes to its unemployment-benefits processes and (2) to pay the unemployment benefits that they were denied. Pls.' Mot. for Prelim. Inj., ECF No. 2 [hereinafter Pls.' Mot.], at 1. For the reasons that follow, the court finds that Plaintiffs have not

---

[1] Plaintiff Hailu has withdrawn his motion for a preliminary injunction; the other three Plaintiffs' motions remain. Notice by Pl. Mulugeta Hailu of His Withdrawal of His Mot. for Prelim. Inj., ECF No. 22.

established a likelihood of standing for purposes of obtaining either their requested prospective or retrospective relief and so denies the motion.

## II.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Prior to *Winter*, courts in this Circuit had employed a sliding-scale analysis in which "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). *Winter* arguably casts some doubt on that approach, though it has not been overruled by either the Supreme Court or the D.C. Circuit. *See id.* At a minimum, the D.C. Circuit has explained, *Winter* means that a plaintiff must demonstrate "a likelihood of success [a]s an independent, free-standing requirement" to secure a stay or preliminary injunction. *See id.* at 393. And, of course, equitable relief is warranted only upon a showing that irreparable injury is likely absent an injunction. *See Winter*, 555 U.S. at 22.

## III.

"The judicial Power" of the federal courts extends only to "Cases" and "Controversies," U.S. CONST. art. III, § 2, cl. 1, "and there is no justiciable case or controversy unless the plaintiff has standing," *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017). "To establish standing, the plaintiff must show (1) it has suffered a concrete and particularized injury (2) that is fairly traceable to the challenged action of the defendant and (3) that is likely to be redressed by a favorable decision[] . . . ." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 376–77 (D.C. Cir. 2017) (internal quotation marks omitted). In a case with multiple

plaintiffs, "the court need only find one plaintiff who has standing" to proceed. *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014).  Plaintiffs bear the burden of establishing standing, and "[e]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted).

At the preliminary injunction stage, a plaintiff must "show a substantial likelihood of standing under the heightened standard for evaluating a motion for summary judgment." *Elec. Priv. Info Ctr.*, 878 F.3d at 377 (internal quotation marks omitted) (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912–13 (D.C. Cir. 2015)).  "[T]he plaintiff cannot rest on mere allegations[] but must set forth by affidavit or other evidence specific facts that, if taken to be true, demonstrate a substantial likelihood of standing." *Id.* (alteration and internal quotation marks omitted).[2]  "Standing is not dispensed in gross"; rather, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (alteration and internal quotation marks omitted).  Here, as noted above, Plaintiffs seek both prospective and retrospective relief.  The court will address Plaintiffs' standing as to each form of relief in turn.

---

[2] Plaintiffs misconstrue how *Food & Water Watch* bears on the standing showing they must make.  They argue that because they filed their motion for a preliminary injunction together with their complaint, they need only show "a substantial likelihood of standing under the standard applicable to a motion to dismiss." Pls.' Reply at 18 (internal quotation marks omitted).  Plaintiffs conflate two standards.  The "substantial likelihood" standard applicable to a motion for preliminary injunction is equivalent to the "heightened standard for evaluating a motion for summary judgment." *Food & Water Watch*, 808 F.3d at 912.  The less rigorous motion-to-dismiss standard is appropriate "for determining whether to dismiss the case in its entirety" but incorrect "for determining whether or not to grant the motion for preliminary injunction." *Id.* at 912–13.  The court makes no determination as to dismissal at this time.

### A.

In order to have standing to press a claim for prospective relief, a plaintiff must be "likely to suffer future injury" from the conduct sought to be enjoined. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). The District argues, albeit in cursory fashion, that awarding the "broad" injunction Plaintiffs seek "would contravene established Article III principles" because it extends beyond their "particular injur[ies]." Defs.' Opp'n to Pls.' Mot., ECF No. 20 [hereinafter Defs.' Opp'n], at 27–28 (internal quotation marks omitted) (citing *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018)). Plaintiffs counter that they "have standing to seek [a] program-wide preliminary injunction[] because there is a substantial risk that they will be harmed in the future from Defendants' violative notice and hearing practices." Pls.' Reply in Supp. of Pls.' Mot., ECF No. 21 [hereinafter Pls.' Reply], at 18. The record, however, fails to support such a showing.

In *Lyons*, the plaintiff, who had been subjected to chokeholds by police officers, sought an injunction against that practice; the Supreme Court made clear that "[i]n order to establish an actual controversy," he "would have had not only to allege that he would have another encounter with the police but also" that the police would once again put him in a chokehold during such an encounter. *Lyons*, 461 U.S. at 106. By analogy, then, Plaintiffs here must establish a substantial risk that at least one of them will file a future claim for unemployment benefits and that the District would deny, terminate, or offset their benefits without adequate written notice and without the opportunity to appeal. This is indeed Plaintiffs' theory of standing as to prospective relief: they argue (1) that the record evidence establishes a substantial risk that Plaintiffs Perry and Werede will again file claims for unemployment benefits at some point in the future, and (2) that when they do, the District's ongoing notice and hearing practices will injure them again. Pls.' Reply at

4

18–19.  But their showings as to both Perry and Werede are too speculative to establish a substantial likelihood of standing.

Plaintiffs argue first that "[t]here is a substantial risk that [Perry and Werede] could apply for unemployment benefits" because of both the "overall risks arising from the weak job market of the District of Columbia" and the "heightened" risks stemming from "their specific occupations."  *Id.* at 20.  Perry has a long career of doing construction work, which, Plaintiffs explain, "[b]y its very nature . . . fluctuates from month to month."  *Id.* at 20.  Plaintiffs cite statistics demonstrating high rates of unemployment in the construction industry, which is often higher than in other industries and "skyrocketed" at the beginning of the pandemic.  *Id.* at 20–21.  As a result, they say, "the future portends a substantial and continuing risk of periodic layoffs necessitating Mr. Perry's reliance on unemployment benefits."  *Id.* at 20.  Plaintiffs make a similar argument as to Werede:  Werede has worked as a server in the hospitality industry, including at hotels, Pls.' Reply at 21; Plaintiffs provide numerous statistics showing the particular instability of and recent high unemployment in that industry and invite the court to extrapolate from those statistics that Werede will be laid off in the future.  *Id.* at 21–23.

Plaintiffs anchor their arguments as to the risk of future layoffs in *Jibril v. Mayorkas*, 20 F.4th 804 (D.C. Cir. 2021), which they suggest supports the proposition that "they need not establish that . . . future benefits claims might occur immediately."  Pls.' Reply at 19.  In *Jibril*, a family that had been subjected to "extensive and intrusive security screenings" at airports sued the government, seeking declaratory and injunctive relief to "safeguard them from similar treatment in the future."  20 F.4th at 808.  The district court had held that the plaintiffs lacked standing to pursue injunctive relief because they had not adequately alleged an imminent threat of future injury, but the D.C. Circuit reversed.  *See id.*  Plaintiffs describe the Circuit's holding as follows:

5

"[T]he D.C. Circuit held that future harm from a government policy was sufficiently 'imminent' to establish standing even though the harm had actually occurred only once (more than two years before the [c]ourt's ruling) and may not occur again for 'the next year or two.'" *Id.* (quoting *Jibril*, 20 F.4th at 814). Plaintiffs then rely on this "year or two" time frame to argue that Werede and Perry face a substantial risk of applying for unemployment benefits "well within the time frame found 'imminent' in *Jibril*." Pls.' Reply at 20.

The problem with Plaintiffs' reliance on *Jibril* is twofold. First, Plaintiffs cite the case to stand for a particular permissible timeframe for future harm without recognizing the factual showing the D.C. Circuit required to establish that harm. It is blackletter law that plaintiffs cannot rely on speculative future injuries to establish Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *Lyons*, 461 U.S. at 109 ("Lyons' lack of standing . . . rest[s] . . . on the speculative nature of his claim that he will again experience injury as the result of that practice even if continued."). In *Jibril*, the D.C. Circuit found the plaintiffs' claimed future injury was *not* speculative because the family's extensive history of traveling overseas to visit family, as well as their religious beliefs, which "require them to travel to Saudi Arabia to fulfill religious obligations," led to "the reasonable inference that [they would] soon travel again" "in the next year or two." *Jibril*, 20 F.4th at 814. Thus while *Jibril* recognized as adequate for standing purposes a future harm that might not come to pass until a year or two in the future, it still required more: specifically alleged facts to give rise to a "strong[] suggest[ion]" that they would again take the action that would expose them to the challenged conduct in order to avoid dismissal.

The second problem with Plaintiffs' reliance on *Jibril* is that they, unlike the plaintiffs in that case, have not established a comparable record to support an inference that they will again apply for unemployment benefits—much less a "year or two" from now. As to Werede, Plaintiffs

6

offer nothing more than the statistics reflecting the unstable landscape of unemployment in the hospitality industry. *See* Pls.' Reply at 21–23. According to her declaration, Werede worked at the Willard InterContinental Hotel for approximately seven years before losing her job and applying for benefits. Pls.' Mot., Decl. of Mizan Werede, ECF No. 2-4 [hereinafter Werede Decl.], ¶¶ 3–4. They do not point the court to any indication that she has filed unemployment-benefit claims previously. *See* Pls.' Reply at 21–23. While Plaintiffs' statistics are helpful context, they tell the court nothing about whether Werede specifically is or will soon become employed, will then be laid off again, and will pursue unemployment benefits in that event. The record is a bit more robust as to Perry: his declaration indicates that he "applied for unemployment compensation two times in the past four years." Pls.' Mot., Decl. of William Perry, ECF No. 2-6 [hereinafter Perry Decl.], ¶ 19.[3] Plaintiffs argue that "[t]his history in and of itself is substantial proof that he will likely suffer future harm." Pls.' Reply at 20. But this history does not come close to that alleged in *Jibril*, where the family had a history of traveling to Jordan every two years over a twenty-five-year period as well as sincerely held religious beliefs requiring them to travel to Saudi Arabia to fulfill religious obligations. Perry is approximately 64 years old and has worked in the construction industry as a mason for his "entire adult career." Perry Decl. ¶¶ 2, 4. Yet, over the course of, presumably, several decades, he identifies having applied for unemployment benefits only twice during the last four years—at least one of those times due to a once-in-a-century pandemic. Such infrequency does not justify the same inference as to likelihood of future injury that the Circuit drew in *Jibril*.

---

[3] In one of those instances, he was, according to the District, found ineligible for traditional unemployment and was instead encouraged to apply for Pandemic Unemployment Assistance, which is no longer in effect. Def.'s Opp'n at 17; D.C. OFF. OF UNEMPLOYMENT COMPENSATION, END OF FEDERAL BENEFITS FREQUENTLY ASKED QUESTIONS (FAQS) (2021), https://unemployment.dc.gov/sites/default/files/dc/sites/unemployment/page_content/attachments/End%20of%20Federal%20Benefits%20FAQs.pdf.

Moreover, the case Plaintiffs cite for the proposition that Perry's history suffices to show a substantial risk of reapplying for benefits is not on point. *See* Pls.' Reply at 20. Notably, the language from that case that Plaintiffs quote to support their argument pertains to the irreparable-harm analysis, not the injury-in-fact analysis—a distinction the opinion is careful to draw. *District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 40 (D.D.C. 2020) ("[T]he concepts of Article III cognizable injury and an irreparable harm are not coterminous . . . ." (citing *In re Navy Chaplaincy*, 534 F.3d 756, 762 (D.C. Cir. 2008)). In any event, the two cases are factually distinct. *Department of Agriculture* involved a challenge to a new Supplemental Nutrition Assistance Program ("SNAP") rule under which the plaintiffs stood to lose benefits if they remained unemployed for three months after the new rule's implementation; the federal government argued the asserted future injury was too speculative because the plaintiffs might become employed within that period. *See id.* at 8, 43. The court concluded that there was a substantial risk the plaintiffs would remain unemployed because they had "searched for regular employment for years without success, and the barriers and obstacles that . . . plagued those efforts . . . [would] not disappear." *Id.* at 44.

Factually, that is almost the inverse of what Plaintiffs argue here. The individuals challenging the new SNAP rule in *Department of Agriculture* were already unemployed and had been for years, despite their best efforts to find work. The record provided no reason for the court to think the plaintiffs' circumstances likely would change within the short three-month period at issue. Here, in order to be exposed again to the District's challenged practices, Perry and Werede would have to (1) become employed if they are not already, (2) again be laid off, and (3) decide to apply for unemployment benefits. Based on the record, which lacks a sustained pattern or history of relevant conduct, this chain of events simply requires more speculation to support an inference

that Perry and Werede face a "real and *immediate* threat" of again seeking unemployment benefits. *Lyons*, 461 U.S. at 105 (emphasis added); *see also Clapper*, 568 U.S. at 410–11 (rejecting plaintiffs' "theory of standing" where it "relie[d] on a highly attenuated chain of possibilities" and some "link[s] in the . . . chain of contingencies . . . amount[ed] to mere speculation").

As noted above, Plaintiffs also argue that when Perry and/or Werede file future benefits claims, the District's ongoing notice and hearing practices will injure them again—that is, that benefits will be denied, terminated, or offset, and that this adverse action will be taken without written notice. *See Lyons*, 461 U.S. at 106; Pls.' Reply at 19. On this point, too, their theory of standing requires impermissible speculation. Plaintiffs ask the court to assume the merits of their claim and so "assume that [the District has] a practice, custom, or policy that violates the Fifth Amendment, the Social Security Act, and D.C. law." Pls.' Reply at 19 n.15 (citing *Waterkeeper Alliance v. EPA*, 853 F.3d 527, 533 (D.C. Cir. 2017)). But, at this stage, even assuming such a practice, custom, or policy, the asserted future injury strikes the court as speculative. An adverse benefits decision is, of course, a necessary predicate to Plaintiffs' contention that the court must assume that any denial, termination, or offset would come without written notice (i.e., the merits of their claim). Premising future harm on termination, denial, or offset of a future benefits claim thus requires speculation that such an event will in fact occur. This is true for both immediate denials of benefit claims and terminations or offsets after benefits are initially granted. *See* Pls.' Reply at 23.[4]

---

[4] Premising future harm on a future adverse benefits decision also requires speculation that said termination, denial, or offset would be without written notice. Again, Plaintiffs ask the court to assume this point. *See* Pls.' Reply at 19 n.15. But the record indicates that at least some applicants receive written notice when benefits are denied, terminated, or offset—as evidenced in part by Plaintiff Muguleta Hailu's withdrawal of his motion for preliminary injunction. Notice by Pl. Mulugeta Hailu of His Withdrawal of His Mot. for Prelim. Inj., ECF No. 22 (correcting the record and noting that Hailu *did* receive notice from the District "explaining the basis for terminating his benefits during a period from March 7, 2021 through May 8, 2021," despite initially stating he had not, and withdrawing his motion for preliminary injunction on that basis). Plaintiffs have pointed out that "a plaintiff need not prove that a municipality *always* follows a practice in order for it to be actionable," and that "[a] pattern of a number of instances can be enough."

For these reasons, Plaintiffs have not demonstrated that either Perry or Werede is likely to succeed in establishing standing to seek injunctive relief.

**B.**

Plaintiffs also ask the court to order, at the preliminary-injunction stage, "payment of back benefits to Plaintiffs whose benefits were denied or terminated without notice" and "refunds of offsets to Plaintiffs whose benefits were offset without notice." Pls.' Mot. at 40. Plaintiffs have not demonstrated a substantial likelihood that they have standing as to this form of relief.

First, as to Plaintiff Woube, the record indicates that when he applied for Pandemic Unemployment Assistance, *see supra* note 3, instead of traditional unemployment benefits (for which he was found ineligible), he was approved and received benefits backdated to October 2020. Def.'s Opp'n at 17; Def.'s Opp'n, Ex. N, ECF No. 20-14; *see also* Pls.' Reply at 7 (explaining that the District has "represented [to Woube] that he [will] be paid benefits for all of the weeks at issue"). Thus to the extent Plaintiffs request payment of back benefits and refunds in order to make each Plaintiff whole, Plaintiffs have not shown a substantial likelihood that Woube can demonstrate an injury—deprivation of benefits to which he is entitled—to support such relief, because it is possible that he has already been made whole.

Similarly, based on the record, Plaintiffs have not established it likely that Plaintiff Perry has a cognizable injury to support payment of back benefits as relief. Plaintiffs do not allege Perry's benefits were terminated or offset. Instead, they allege a failure to give notice of denial or any other decision on Perry's claim. *See* Pls.' Reply at 5–6. The record indicates that Perry was,

---

Pls.' Reply at 7. They also point to some "record evidence demonstrating that [the District's] practice (of terminating, seizing, or denying benefits without adequate notice) is . . . widespread." *Id.* at 8. But even if that is so, it would require conjecture to conclude that, if either of the Plaintiffs reapplied for benefits in the future, either of their potential benefits claims would be among those denied, terminated, or offset without written notice and the opportunity for appeal. In any event, because the court holds that Plaintiffs have not adequately shown that Perry and Werede face a substantial risk of reapplying for benefits in the future and having their claim denied, terminated, or offset, the court does not rule on this issue.

after applying for benefits beginning in June 2020, determined to be ineligible for benefits in March 2021; he did, in fact, receive written notice of this denial. *See* Perry Decl. ¶ 9 ("On or around March 2021, I received a decision from [the District] denying my unemployment claim because of insufficient wages in the base period . . . ." (citing Def.'s Opp'n, Ex. J, ECF No. 20-10 (monetary determination form))).[5] The District indicates that it invited Perry to apply for Pandemic Unemployment Assistance instead, but there is no record of him doing so. *See* Def.'s Opp'n at 17. Because the record establishes no more than that Perry was ineligible for the benefits Plaintiffs say he has yet to receive, the court cannot find he is likely to have standing to pursue payment of those back benefits.

As to Plaintiff Werede, the record in its current state does not allow the court to conclude she is likely to have standing to seek a refund of benefits allegedly offset without notice. Werede testifies that she did not receive benefits for three weeks in January 2021 and that her online benefits portal indicated that the benefits had been withheld through offset. Werede Decl. ¶¶ 9–10. She states that she eventually received some but not all retroactive benefits. But the offset receipt in the record is for two weeks in April 2021. Werede Decl., Ex. A; Werede Decl. ¶ 9. And the District's explanation—that it issued Werede a "bridge" payment in February 2021, *after* the weeks for which Werede states she was not paid, and then later reduced her retroactive benefits payment to avoid making a duplicate payment—does not clarify this apparent inconsistency. *See* Def.'s Opp'n at 9. The record is, frankly, disorienting. At a minimum, it is ambiguous as to (1) when there was an offset, (2) whether and when it was reimbursed, and (3) whether an offset was the reason Werede was not paid in January 2021. In light of this ambiguity, the court cannot

---

[5] The record also indicates that Perry was denied benefits, in writing and with an explanation for the grounds of the denial, in March 2020. Def.'s Opp'n, Ex. I, ECF No. 20-9 (determination form explaining that Perry failed to show "he quit for good cause connected with [his] work" and so was disqualified from receiving benefits).

11

now conclude that Werede has established a substantial likelihood that she is due anything based on an unnoticed offset, such that the relief she seeks (repayment) would be permissible.

Finally, even if any Plaintiff had established an actual denial, termination, or offset of benefits to which they are entitled without notice, the court is dubious that payment of back benefits would be the appropriate relief. The remedy a plaintiff requests must, as a general constitutional principle, be capable of redressing the injury the plaintiff asserts for standing purposes. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (articulating requirement that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision"). Stated differently, the violation sought to be redressed must match the requested relief. Payment of back benefits is not the remedy to lack of notice—notice is. In theory, Plaintiffs could ask the court to order the District to issue the written benefits determination they say never came, which would enable them to take an appeal. But that is not the retrospective relief that Plaintiffs seek. *See* Pls.' Mot. at 1 (moving the court to "order[] payment of back benefits to Plaintiffs whose benefits were denied or terminated without notice" and "order[] refunds of offsets to Plaintiffs whose benefits were offset without notice).

### IV.

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction, ECF No. 2, is denied.

Dated: April 14, 2022

Amit P. Mehta
United States District Court Judge