UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MULUGETA HAILU *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 22-cv-00020 (APM) |
| UNIQUE N. MORRIS-HUGHES *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

**I.**

This action involves claims brought by Plaintiffs Mulugeta Hailu, William Perry, Yohannes Woube, and Mizan Werede for alleged procedural due process and statutory violations in the District of Columbia's administration of their applications for unemployment benefits. Plaintiffs allege that Defendants District of Columbia, Mayor Muriel Bowser, and the Director of the District of Columbia Department of Employment Services ("DOES"), Unique N. Morris-Hughes, violated their constitutional and statutory rights by denying, terminating, and seizing unemployment benefits without providing adequate notice and an opportunity to challenge those actions. Specifically, they allege that Defendants (1) failed to provide written notice of adverse unemployment benefits determinations and (2) improperly refused to review on appeal adverse unemployment benefits determinations that lacked written findings.

On April 14, 2022, this court denied Plaintiffs' motion for a preliminary injunction, finding that they had failed to establish "a likelihood of standing for purposes of obtaining either their requested prospective or retrospective relief." Mem. Op. and Order, ECF No. 27, at 2. Two months later, Plaintiffs Hailu and Werede voluntarily dismissed their claims without prejudice.

Notice of Dismissal by Pls. Mulugeta Hailu and Mizan Werede, ECF No. 32 [hereinafter Notice of Dismissal]. The remaining plaintiffs, Mr. Perry and Mr. Woube, then withdrew "their claims for prospective declaratory and injunctive remedies based on future injury." Notice by Pls. Yohannes Woube and William Perry Withdrawing Their Claims for Pros. Decl. & Inj. Rem., ECF No. 33 [hereinafter Notice Withdrawing Claims].

What remains of the case are claims by Mr. Perry and Mr. Woube seeking retrospective declaratory relief, compensatory damages, and nominal damages. Defendants again move to dismiss for lack of standing and for failure to state a claim upon which relief may be granted. Defs.' Mot. to Dismiss Pls.' Compl., ECF No. 29 [hereinafter Defs.' MTD], Mem. of P. & A. in Supp. of Defs.' Mot., ECF No. 29-1 [hereinafter Defs.' Mot.]. For the reasons that follow, Defendants' motion to dismiss is granted.

## II.

The court first addresses Plaintiffs' sole claim against Defendants Bowser and Morris-Hughes in their official capacities. In Count One, Plaintiffs assert a "private right of action" under the Fifth Amendment Due Process Clause for failure to provide adequate notice before depriving Plaintiffs of their constitutionally protected property rights. Compl., ECF No. 1, ¶¶ 35–45. As to that claim, Plaintiffs seek: (1) prospective injunctive relief that prohibits Defendants from denying, terminating, or reducing benefits without a written decision, and (2) a declaration that Defendants' failure to provide notice and an opportunity to challenge decisions denying, terminating, or reducing benefits through offset violates the Due Process Clause. Compl. ¶ 45, 30–31 (identifying as the relief requested the "equitable remedies set forth in paragraphs A.1 through A.4," which seek a form of prospective injunctive relief, and "B.1 and B.2 of the Prayer for Relief," which seek declaratory relief only as to offset practices).

2

As stated above, Plaintiffs no longer seek prospective injunctive relief. *See* Notice Withdrawing Claims. And the only Plaintiffs who alleged that Defendants had offset their benefits without adequate notice and opportunity to challenge—Hailu and Werede—have voluntarily dismissed their claims. Notice of Dismissal; *see* Compl. ¶¶ 28–34. Because the remaining plaintiffs no longer seek prospective injunctive relief, and no plaintiff remains who suffered injury arising from the challenged offset practices, Count One must be dismissed.[1]

### III.

Five counts remain against the District. Plaintiffs bring three counts under 42 U.S.C. § 1983, alleging that the District has a policy, custom, or practice of: (1) failing to provide adequate notice of the reasons for denying or terminating benefits, and (2) providing insufficient process for individuals to contest denials or terminations, each in violation of the Due Process Clause (Count II) and 42 U.S.C. § 503(a)(3) (Count III), *id.* ¶¶ 46–54, 66–76; and (3) not making timely determinations and payments of employment benefits in violation of 42 U.S.C. § 503(a)(1) (Count IV), *id.* ¶¶ 88–100. Plaintiffs' remaining two claims are for failing to follow mandatory notice and hearing procedures (Count V) and failing to make timely benefits determinations (Count VI) in violation of the D.C. Code and D.C. Municipal Regulations. *Id.* ¶¶ 101–18.

### A.

The District asks the court to hold, as it did when denying the motion for preliminary injunction, that no plaintiff has standing as to any claim. Defs.' Mot. at 13–17. The court's present

---

[1] In Counts II, III, and V, Plaintiffs also seek relief with respect to Defendants' offset practices. *See* Compl. ¶¶ 64, 86, *id.* at 31 (seeking compensatory damages for "benefit amounts offset by Defendant without adequate notice" (A.6)), *id.* (seeking declaratory judgments that Defendants' offset practices violated federal and District of Columbia law (B.3, B.4, B.6, B.7)). To the extent Counts II, III, and V seek this relief, they too are dismissed because neither Mr. Perry nor Mr. Woube have standing to challenge the offset practices.

3

inquiry is different, however. First, this matter is at the motion to dismiss stage, which requires Plaintiffs only to make a plausible showing of standing. *See Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015). Second, Plaintiffs have now dropped their demand for prospective relief, meaning that their failure to establish *future* injury is no longer dispositive. They now seek only retrospective relief. Pls.' Opp'n to Defs.' Mot., ECF No. 31 [hereinafter Pls.' Opp'n], at 6.

**1**.

In addressing standing, the court begins with general principles of law and then evaluates whether any plaintiff has standing as to "each claim" and "form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (internal quotation marks and citation omitted).

"The judicial Power" of the federal courts extends only to "Cases" and "Controversies," U.S. CONST. art. III, § 2, "and there is no justiciable case or controversy unless the plaintiff has standing," *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017). "To establish standing, [a] plaintiff must show (1) [he] has suffered a concrete and particularized injury (2) that is fairly traceable to the challenged action of the defendant and (3) that is likely to be redressed by a favorable decision[] . . . ." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 376–77 (D.C. Cir. 2017) (internal quotation marks omitted). Plaintiffs bear the burden of establishing standing, and "[e]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted). "To survive a motion to dismiss for lack of standing, a complaint must state a plausible claim that the plaintiff has suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Humane Soc'y*, 797 F.3d at 8.

Courts must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). However, courts "do not assume the truth of legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts set out in the complaint.'" *Id.* (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007) (internal citation omitted)). In determining standing, courts "may consider materials outside of the complaint." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). In a case with multiple plaintiffs, "the court need only find one plaintiff who has standing" to proceed. *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014).

**2.**

The court first assesses whether either remaining Plaintiff has standing with respect to the claims asserted. Plaintiffs contend that Mr. Perry has properly pleaded injury in fact for two time periods: (1) from June 6, 2020 to February 28, 2021, when Mr. Perry "filed a claim," "was entitled to benefits," and "DOES failed to pay, or notify him of any decision regarding[] the claim," and (2) after February 28, 2021, when "DOES sent him a notice denying his claim" and "failed to pay, or notify him of any decision regarding[] the request for a redetermination of benefits previously denied." Pls.' Opp'n at 7. Further, they argue that "Defendants injured Mr. Woube by denying his benefits claim without any notice or opportunity to be heard*," id.* at 3, and by failing to notify him of his benefits determination in a timely manner, *see* Compl. ¶ 33. Because the court concludes that Mr. Woube has standing as to each claim, it does not evaluate Mr. Perry's case for standing.

Mr. Woube first applied for unemployment benefits in April 2020 and did not receive a determination until mid-October 2020*. Id*. He received no opportunity to dispute the denied

benefits, and the District of Columbia Office of Administrative Hearings ("OAH") refused to hear his appeal because Mr. Woube "could not provide a written DOES decision explaining the basis for" the benefits determination. *Id.* ¶ 34. Taking these allegations as true, the court finds that Mr. Woube's injury (denial of benefits without adequate notice and an opportunity to be heard)[2] is "fairly traceable" to the District's failure to provide adequate notice of his benefits determination; accordingly, Mr. Woube has standing to bring Counts II, III, and V. Furthermore, the record shows that Mr. Woube did not receive a benefits determination for six months after he first filed a claim. *Id.* ¶ 33. Therefore, he also has standing with respect to Counts IV and VI, which allege violations of law resulting from the District's untimely decision-making.

### 3.

The court next addresses whether Mr. Woube has standing for the specific relief he seeks. Defendants argue that, because "Mr. Woube was ultimately paid $15,677 for his claims in 2020 and 2021," his request for benefits payments is "moot because he is no longer injured by the lack of such payments." Defs.' Mot. at 15. Plaintiffs respond that "Defendants' mootness defense is baseless [because] Mr. Woube seeks other remedies *in addition* to the payment of back benefits." Pls.' Opp'n at 4. Specifically, Mr. Woube seeks compensatory damages for mental and emotional distress resulting from the lack of notice, nominal damages for his Due Process claim, and a "retrospective declaratory judgment that Defendants violated his notice and hearing rights under federal and D.C. law." *Id.* at 6.

---

[2] Mr. Woube's injury is procedural in nature. "A procedural injury claim . . . must be tethered to some concrete interest adversely affected by the procedural deprivation." *See WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013). Here, Mr. Woube's concrete interest that is adversely affected by the procedural deprivation is the nonpayment of benefits. *See, e.g.*, *Young v. U.S. Dep't of Labor*, No. 17-cv-2428 (JDB), 2020 WL 1557170, at *7 (D.D.C. Apr. 1, 2020) (holding that "procedural injury in the adjudication of plaintiffs' [ ] compensation claim satisfies the injury-in-fact requirement").

*Compensatory Damages.* Plaintiffs argue that Mr. Woube is entitled to seek compensatory relief for his § 1983 claims because—"as a result of the withholding of benefits"—Mr. Woube "suffered financial, mental and emotional distress," "was at times unable to pay for food," and was forced to "leave his home of more than a decade" because he "was unable to pay for rent." Compl. ¶ 33. Defendants do not dispute that compensatory damages are recoverable for mental and emotional distress under § 1983, but respond that Mr. Woube is not entitled to compensatory damages because "[a]ny 'distress' manifesting from [his] inability to afford necessities, is not fairly traceable to the delay in benefits payments because [Mr. Woube has] not plausibly alleged [that he was] eligible for benefits in the first place." Defs.' Reply in Further Supp. of Defs.' Mot., ECF No. 36 [hereinafter Defs.' Reply], at 2 (quoting Pls.' Opp'n at 4).

The court need not decide at this juncture whether Mr. Woube was in fact eligible for benefits to recover damages for emotional distress because, on this record, it is plausible that he was. The District insists that "Mr. Woube was monetarily ineligible for regular unemployment compensation on April 16, 2020, July 31, 2020, October 15, 2020, and April 19, 2021." Defs.' Mot. at 10 (citing Defs.' Opp'n to Pls.' Mot. for Prelim. Inj., ECF No. 20 [hereinafter Defs.' PI Opp'n], Ex. M, ECF No. 20-13. Yet, on March 1, 2022, "DOES issued Mr. Woube payments totaling $15,677 for unemployment claims filed between May 23, 2020 and February 13, 2021," including for two of the weeks Defendants contend Mr. Woube was ineligible. Defs.' Mot. at 11; *compare id.* at 10 ("Mr. Woube was monetarily ineligible for regular unemployment compensation on . . . July 31, 2020 [and] October 15, 2020.") *with* Defs.' MTD, Ex. A, ECF No. 29-2, at 2–3 (showing Mr. Woube received benefits payments for each week in July 2020 and October 2020). It is not clear to the court why DOES would issue benefits payments to Mr. Woube if he was "not

7

entitled to benefits in the first place." Defs.' Reply at 3. The District makes no effort to explain this apparent inconsistency.

To make matters more confusing, at times Defendants imply that Mr. Woube *was* entitled to benefits. *See id.* at 1 ("Mr. Woube has been fully compensated for his claimed benefits, while Mr. Perry was ineligible for them."). Due to the lack of clarity in the record, and taking all factual inferences in Mr. Woube's favor, the court finds that there is a "plausible claim that [Mr. Woube] has suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Humane Soc'y*, 797 F.3d at 8. In other words, the court finds it plausible that Mr. Woube was entitled to benefits and the District's failure to notify him about his eligibility caused him actual injury in the form of mental and emotional distress, lost housing, and food insecurity. Accordingly, Mr. Woube has standing to seek compensatory damages.

*Nominal Damages.* Plaintiffs concede that Mr. Woube has standing to seek "nominal damages for his Due Process claim" only if "he did not demonstrate the actual injury required to recover compensatory damages." Pls.' Opp'n at 5. Because Mr. Woube's assertion of actual injury is plausible, at this stage, he does not have standing to seek nominal damages. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 800 (2021) ("Nominal damages are . . . the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages."); *see Carey v. Piphus*, 435 U.S. 247, 248 (1978) ("[I]n the absence of proof of actual injury, [Plaintiffs] are entitled to recover only nominal damages.").

*Retrospective Declaratory Relief.* Plaintiffs argue that Mr. Woube has standing to seek "a retrospective declaratory judgment that Defendants violated his notice and hearing rights under

8

federal and D.C. law." Pls.' Opp'n at 6.  They argue that "a retrospective declaratory judgment (premised only on past harm) is an available remedy when intertwined with a claim for damages." *Id.*  The District agrees that a claim for retrospective declaratory relief in the absence of injunctive relief can be sustained (1) if "constitutional adjudication is required" and (2) "as a predicate to a damages award."  Defs.' Reply at 4 (internal quotation marks omitted).  Because Mr. Woube has standing to seek compensatory damages, and resolving his claims may require this court to declare whether the District violated his constitutional rights, Mr. Woube is entitled to seek declaratory judgments determining that the District acted unlawfully.  *Coleman through Bunn v. District of Columbia*, 306 F.R.D. 68, 75 (D.D.C. 2015) (recognizing that a retrospective declaratory judgment is available when the claim is "intertwined with a claim for monetary damages that requires [the Court] to declare whether a past constitutional violation occurred").

## IV.

Having found that at least one Plaintiff has standing, the court turns to the merits.  In Counts II, III, and IV of their Complaint, Plaintiffs seek to hold the District municipally liable under 42 U.S.C. § 1983 for constitutional and federal statutory violations allegedly committed by District employees.  Compl. ¶¶ 66–100.  "Under *Monell* [*v. Department of Social Services of City of New York*, 436 U.S. 658 (1978)], municipalities are liable for their agents' constitutional torts [and violations of federal law] only if the agents acted pursuant to municipal policy or custom."  *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.").

9

There are four ways to show that an unconstitutional policy or custom exists: (1) "the municipality adopts a policy that itself violates the Constitution," (2) "the unconstitutional action was taken by a 'policy maker' within the government," (3) "the employees' unconstitutional actions 'are so consistent that they have become [a] 'custom'' of the municipality of which the supervising policymaker must have been aware," or (4) "the municipality knew or should have known of a risk of constitutional violations, but showed 'deliberate indifference' to that risk by failing to act." *Hurd v. District of Columbia*, 997 F.3d 332, 337 (D.C. Cir. 2021) (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)). "A showing under *any* of these four theories suffices to sustain a claim of *Monell* liability against a municipality." *Goodwin v. District of Columbia*, 579 F. Supp. 3d 159, 168 (D.D.C. 2022).

In this case, Plaintiffs advance the first and fourth theories of municipal liability. They argue that: (1) the District adopted an explicit policy that itself violates the law, and (2) the District knew or should have known of a risk of violations and showed "deliberate indifference" by failing to act. Pls.' Opp'n at 9–13. Plaintiffs do not, however, successfully plead either ground for municipal liability.

### A.

Plaintiffs' sole contention as to the adoption of a policy is "that they were injured by an explicit OAH procedure refusing to hear appeals of unemployment benefits determinations unless DOES issues a written decision explaining the determination." Pls.' Opp'n at 12;[3] *see* Compl. ¶ 60. Specifically, Plaintiffs allege that "Mr. Woube tried to appeal to OAH but OAH would not hear the case because he could not provide a written DOES decision explaining the basis for failing to pay benefits." Compl. ¶ 34.

---

[3] Plaintiffs also reference an alleged "offset-seizure" policy, Pls.' Opp'n at 12, but no remaining plaintiff has standing to challenge that purported policy.

10

But the problem with Plaintiffs' pleading is that they cite no actual OAH policy. Plaintiffs insist that they were injured by an "explicit" OAH policy that "refus[es] to hear appeals of unemployment benefits determinations unless DOES issues a written decision explaining the determination," Pls.' Opp'n at 12, and as support they point to paragraphs 60 and 82 of their Complaint, *see id.* But those paragraphs only allude to the existence of a "policy" without ever identifying one. *See* Compl. ¶¶ 60, 82. A conclusory assertion that fails to state "some factual basis for the allegation of a municipal policy" does not plausibly state a claim for municipal liability based on an adopted policy. *See Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996); *cf. id.* at 422–423 (holding that a plaintiff pleading municipal liability based on inadequate training can survive a motion to dismiss by alleging "both a failure to train and an unusually serious instance of misconduct that, on its face, raises doubts about a municipality's training policies").

### B.

Plaintiffs' pleading of "deliberate indifference" fares no better. A "city's inaction . . . constitutes a 'policy or custom' under *Monell* when it can be said that the failure [to act] amounts to ''deliberate indifference' towards the constitutional rights of persons in its domain.'" *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388–89 & n.7 (1989)). "Deliberate indifference is determined objectively, 'by analyzing whether the municipality knew or should have known of the risk of constitutional violations,' and yet failed to respond as necessary." *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 53 (D.D.C. 2005) (quoting *Baker*, 326 F.3d at 1307). Deliberate indifference "involves more than mere negligence," and it "does *not* require the city to take reasonable care to discover and prevent constitutional violations. It simply means that, faced with

actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction." *Warren*, 353 F.3d at 39. Actual or constructive knowledge may be shown by demonstrating "[a] pattern of similar constitutional violations[.]'" *Hurd*, 997 F.3d at 339 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

Plaintiffs here contend that the District "knew or should have known that" DOES employees (1) "repeatedly den[ied], terminat[ed], and/or seiz[ed] beneficiaries' unemployment benefits without adequate notice or opportunity to be heard," and (2) "failed to make timely [benefits] determinations and timely [benefits] payments," and thus acted with "deliberate indifference" to the risk of violating Plaintiffs' rights under the Due Process Clause and the Social Security Act. Pls.' Opp'n at 9–11. But Plaintiffs have alleged *no facts* to support those assertions. At most, they rely on their own circumstances to plead deliberate indifference. Two isolated examples do not, however, constitute a "pattern of similar constitutional violations" necessary to establish actual or constructive notice. *Connick*, 563 U.S. at 62. They also do not "allege any actual or constructive knowledge *by a policymaker*." *Jones v. Horne*, 634 F.3d 588, 602 (D.C. Cir. 2011) (emphasis added); *see also Harvey v. District of Columbia*, 798 F.3d 1042, 1053 (D.C. Cir. 2015) (finding deliberate indifference where the evidence showed "a longstanding practice of deliberate disregard of the medical needs of involuntarily committed mental patients"); *Aubin v. District of Columbia*, 107 F. Supp. 3d 169, 172 (D.D.C. 2015) (dismissing § 1983 municipal liability claim where "plaintiff merely relies upon the one incident of his own arrest in his allegations"); *DuBerry v. District of Columbia*, 582 F. Supp. 2d 27, 39 (D.D.C. 2008) (dismissing case where the plaintiff had "not produced any evidence that the Department's alleged discriminatory employment practices impacted a single employee or prospective employee other than himself").

For these reasons, the court finds that Plaintiffs have failed to plausibly plead that the District acted with "deliberate indifference" to the risk of violating Plaintiffs' constitutional and statutory rights.

## V.

Plaintiffs bring Counts V and VI against the District under various provisions of the D.C. Code and D.C. Municipal Regulations. *See* Compl. ¶¶ 101–18. The court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a).

A district court "may decline to exercise supplemental jurisdiction" over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367; *see Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) ("A district court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed."). Because the court "has dismissed all claims over which it has original jurisdiction," the court declines to consider the remaining state law claims. *Shekoyan*, 409 F.3d at 423.

## VI.

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 29, is granted. A final, appealable order accompanies this Memorandum Opinion.

Dated: February 23, 2023

Amit P. Mehta
United States District Court Judge